**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-01653-REB

DOUGLAS EDWARD BRUCE,

      Applicant,

v.

MARIANNE CLEMENTI, Probation Officer,
STATE OF COLORADO, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

**ORDER TO DISMISS IN PART AND FOR ANSWER
AND TO DENY MOTION TO STAY AND CLARIFY**

---

Blackburn, J.

## I. Background

Applicant, acting *pro se*, initiated this action by filing an Application for Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2241.  A review of the Application indicated

that Applicant's claims are more appropriately addressed under 28 U.S.C. § 2254,

because Applicant is challenging the validity of his 2012 conviction and not the

execution of his sentence.  Applicant was directed to submit his claims on a proper

Court-approved form that is used in filing § 2254 actions.

Applicant complied and submitted a § 2254 Court-approved form and asserted

four claims.  Rather than state on the form the supporting facts for each of the four

claims, Applicant attached (1) a narrative of the state criminal proceedings; (2) a

request that his pending state probation hearings be stayed until resolution of this case;

(3) the motion to reconsider the length limit of his opening brief that he filed in the

Colorado Court of Appeals (CCA),which includes a listing of the fifty-four claims he desired to present to the CCA; and (4) the CCA's judgment affirming his conviction.

Respondents were directed to address the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A) and/or procedural default, which they did in their Pre-Answer Response. Respondents contend that Applicant's four claims stated on the § 2254 form are inadequate and do not meet the standard set forth in the Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases Under Section 2254, because notice pleading is not sufficient and Applicant must assert facts that point to a real possibility of constitutional error.

Magistrate Judge Gordon P. Gallagher then directed Applicant to amend and specify all grounds for relief available to him and to state the facts that support each ground. On October 7, 2015, Applicant submitted an Amended Petition, [#13][1], and an Attachment, [#14], that sets forth fifty-six claims. Thus, the October 7, 2015, Amended Petition and Attachment are the operative pleadings in this case.

Because Applicant filed an amended § 2254 pleading, Respondents filed a Pre-Answer Response on November 27, 2015, *see* [#20], that addresses the amended pleading. On December 9, 2015, Applicant filed a Reply, [#21], to the Pre-Answer Response. Applicant also submitted a Motion to Stay Probation Sentencing and Request for Clarification of Magistrate's Order, [#26]. I address the Pre-Answer Response and Reply, along with the Motion to Stay.

---

[1] [#13] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

The fifty-six claims Applicant raises are summarized as follows.

(1) Denial by the court of additional time to obtain counsel and being arraigned over an objection;

(2) Denial of the right to subpoena witnesses;

(3) Denial of the right to hearings on timely written pretrial motions;

(4) Denial of the ability to call IRS auditors or admit their reports;

(5) Alteration of the terms of the indictment after all evidence was completed;

(6) Lack of jurisdiction and verdicts that did not match the charges;

(7) Denial of a jury of peers from the vicinage of the alleged crime;

(8) Denial of the right to an impartial jury;

(9) Verdicts that lack sufficient evidence;

(10) Rejection by AG of the IRS definition of federal taxable income, line 1 on the state income tax return;

(11) Trial court failure to tender Applicant's jury instructions to the jury;

(12) Denial of the right to a speedy and public trial;

(13) Trial court error by denying applicant's request for a bill of particulars;

(14) Refusal by prosecution to provide discovery within the 20-day deadline required by Colo. R. Crim. P. 16;

(15) Fraud by the prosecution in padding records;

(16) Prosecutorial failure to index the discovery;

(17) Trial court error by denying Applicant's motion to suppress bank records;

(18) Concealment of evidence of innocence from the grand jury by the prosecution;

(19) Denial of a state audit;

(20) Trial court openly sided against Applicant during the trial by making derogatory remarks about individuals on Applicant's witness list;

(21) Prosecution repudiated its own witness;

(22) Prosecution admitted evidence with no probative value;

(23) Prosecution persuaded the jury to overrule federal law and findings;

(24) Absence of unanimous jurors of the conviction and of a special verdict on what four amounts jurors found to be taxable;

(25) Prosecution deceived jurors on the definition of "income";

(26) Felony charges were cumulative;

(27) Prosecution wrongly charged Applicant with influence of a public servant when he was cooperating;

(28) Criminal charges are arbitrary and capricious when a civil resolution is available for the same action;

(29) Prosecution prevented the presentation of exculpatory evidence;

(30) Prosecution improperly informed the jury about a pretrial motion Applicant filed regarding the statute of limitations on felony prosecutions;

(31) "The AG engaged in scurrilous personal attacks on petitioner throughout the trial to inflame juror passions";

(32) Trial court denial of Applicant's presentation of character evidence from two Colorado congressman;

(33) Trial court curtailing of Applicant's redirect testimony;

(34) Trial court improper denial of Applicant's proposed jury

instructions defining the terms "evading," "income," "lobbying," "good faith," and "specific intent";

(35) Tax refund by the state department of revenue was a final civil finding and the state is precluded from proceeding with a subsequent criminal proceeding regarding the refund;

(36) Withholding by the prosecution of evidence that Applicant had been given a full civil tax refund;

(37) Improper conviction for tax evasion and fraud offenses after 2005, when there was no 2006 or later tax return in evidence;

(38) Trial court refused to admit evidence of Applicant's innocence;

(39) Lack of grand jury jurisdiction based on state statutory requirements;

(40) Prosecution only called ten of the sixty witnesses it endorsed;

(41) Count four is impossible because Applicant cannot be charged for not filing returns in 2006 and 2007 and concurrently charged with engaging in tax evasion and tax fraud for that time period;

(42) Denial of Applicant's written discovery requests;

(43) Lack of probable cause supporting the indictment and denial of grand jury motions without a hearing;

(44) Misconduct during grand jury proceedings, including the number of investigators in the grand jury room, and juror residency and composition violated applicant's rights to due process and equal protection;

(45) Lack of probable cause and particularity in affidavits and motions for orders to produce records and in grand jury subpoenas;

(46) Errors in the jury instructions;

(47) Trial court was biased;

(48) Denial by trial court of most defense exhibits, then trial court lost one of few exhibits admitted, and falsely accused Applicant of putting admitted exhibits in the snow and throwing exhibits in the courtroom during trial;

(49) Denial by trial court of Applicant's right to print and present to the jury state and federal tax law and constitutional provisions;

(50) Denial by the trial court of Applicant's right to present a defense relying on  tax-exempt status, non-profit mailing status, his state non-profit standing, and sales tax exemption;

(51) Denial by trial court of Applicant's right to present a defense that how a $2 million loan is used cannot disqualify a charity because it was not and is not tax-deductible;

(52) Denial by trial court of Applicant's right to impeach the chief state investigator;

(53) Trial court imposed ten-hour trial days and blamed Applicant in front of the jury for the extended days;

(54) "Filing a false state tax return is impossible when defendant accurately listed on line one the entry on the federal tax return line and the true amount of withholding";

(55) Denial by trial court of Applicant's requests to share the grand jury transcript with prospective defense attorneys; and

(56) Trial court error by refusing to admit an exhibit quoting *Gregory v. Helvering*, 69 F.2d 809, 810 (2d Cir. 1934), that explains the difference between tax evasion and tax avoidance.

[#14].

## II. Analysis/§ 2254

Because Applicant is not represented by an attorney, I must construe the

Application liberally, which I have.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972);

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I may not act – and

have not acted – as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

For the following reasons, the § 2254 action will be dismissed in part because many of the claims are barred procedurally.  However, the Respondents will be directed to answer Claims Twenty, Twenty-Eight, Thirty, Thirty-One, Thirty-Two, and Thirty-Three.  Finally, Applicant's Motion to Stay Probation will be denied.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. People*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement.  *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989).  Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts," *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

"The exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Respondents concede the action is timely, but they contend that all but two of the fifty-six claims are defaulted procedurally and that the two nondefaulted claims, Claims Thirty and Thirty-Three are unexhausted.  I have reviewed all fifty-six claims and Applicant's direct appeal, and find as follows.

### A. Procedurally Barred

In Applicant's direct appeal, the CCA denied appellate counsel's request to exceed the 9,500 word limit to the opening brief and to file an addendum.  *See* [#9-4, #9-5, and #9-6].  Applicant had also filed a *pro se* request to reconsider and raised fifty-four claims, which request was denied.  *See* [#9-3 and #9-2].  The only claims addressed by the CCA were the ten claims presented by counsel for the Applicant in the opening brief submitted on May 12, 2014.  *See* [#9-1 and #9-8].

"Federal habeas courts are prohibited from 'review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Bunton v. Atherton*, 613 F.3d 973, 989 (10th Cir. 2010) (alteration  original), cert. denied, 563 U.S. 905 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation omitted).

"A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998) (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). "For the state ground to be adequate, it must be strictly or regularly followed and applied evenhandedly to all similar claims." *Hickman*, 160 F.3d at 1259 (citations and internal quotations omitted). A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in the "vast majority of cases." *Dugger v. Adams*, 489 U.S. 401, 410 n. 6 (1989). Application of this procedural default rule in the habeas corpus context is based on concerns of comity and federalism. *Coleman*, 501 U.S. at 730.

### 1. Hybrid Representation/Word Limits

Applicant's *pro se* motion to reconsider the word limit of opening brief was filed with the CCA on May 28, 2014, while he was represented by counsel. *See* [#9-2 at 1 and #12]. The motion to reconsider includes fifty-four claims in addition to the ten claims that appellate counsel submitted in an opening brief on May 12, 2014. [#9-1 and #9-2]. In the motion to reconsider, Applicant requested that the new fifty-four claims be considered by the CCA in addition to the ten original claims. [#9-2 at 3].

First, Applicant's *pro se* motion does not constitute fair presentation to the CCA because there is no right to hybrid representation. *See People of the State of Colo. v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). A Colorado court, "may ignore" filings made by a *pro se* defendant who is represented by counsel. *Del Rantz v. Hartley*, 577 F. App'x 805, 809 (10th Cir. 2014) (quoting *People of the State of Colo. v. Gess*, 250 P.3d 734, 737 (Colo. App. 2010)). The CCA's reason for denying consideration of the *pro se* motion, therefore, was based on an adequate ground that is regularly followed.

Furthermore, the CCA's refusal to consider the *pro se* motion for an opening brief that exceeds 9,500 words is based on state procedural ground, C.A.R. 28(g) (2012) that is independent of federal law. Thus, federal habeas review is precluded as a matter of law. The fifty-four claims that were presented improperly to the CCA in Applicant's motion to reconsider, but not in the direct appeal, are procedurally defaulted.

Unless the procedural default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice I will not review the issues. *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998); *see also Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007). A federal court may proceed to the merits of a procedurally defaulted habeas claim only if the applicant establishes either cause for default and actual prejudice or a fundamental miscarriage of justice when the merits of a claim are not reached. *See Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997). Applicant's *pro se* status does not exempt him from the requirement of demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

To demonstrate cause for his procedural default, Applicant must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). Ineffective assistance of counsel may establish cause excusing a procedural default. *Jackson*, 143 F.3d at 1319.

A word limitation does not constitute cause for the default of the fifty-four claims

that Applicant and his attorney attempted to present to the CCA in both the addendum

and motion to reconsider.  *See Trujillo v. Ploughe*, 475 F. App'x 261, 266-67 (10th Cir.

2012) (*Trujillo* argued that the procedural default was due to the Colo. App. R. 28(g)

thirty-page limit).  In *Trujillo*, the Tenth Circuit relied on *United States v. Ceballos-

Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004) (the law has never been interpreted to

allow litigants to disregard established procedural rules), for the finding that a page

limitation does not constitute cause for a defendant's procedural default.  Accordingly,

Applicant has not demonstrated that some objective factor external to the defense

impeded his efforts to comply with the State's word limitation procedural rule.

To show prejudice, an applicant must demonstrate that he suffered "actual

prejudice as a result of the alleged violation of federal law."  *Coleman*, 501 U.S. at 750.

Nothing Applicant asserts demonstrates actual prejudice based on his inability to file

a brief that included the new and additional fifty-four claims he now claims he was

precluded from having reviewed by the CCA.

A fundamental miscarriage of justice occurs when "a constitutional violation has

probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at

496.  A "substantial claim that constitutional error has caused the conviction of an

innocent person is extremely rare."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  A

fundamental miscarriage of justice provides only "a narrow exception to the cause

requirement where a constitutional violation has probably resulted in the conviction of

one who is actually innocent of the substantive offense."  *Dretke v. Haley*, 541 U.S. 386,

393 (2004) (citations and internal quotation marks omitted).

In order to demonstrate a fundamental miscarriage of justice, Applicant must

"support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schulp*, 513 U.S. at 324.  Applicant then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Applicant's claims of innocence are based on the state court record and present no new reliable evidence circumstantiating his actual innocence.  Thus, Applicant fails to demonstrate a fundamental miscarriage of justice.

Because Applicant has failed to show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrated that the failure to consider his claim will result in a fundamental miscarriage of justice, the fifty-four claims, to the extent that they are not properly presented or subsumed in the ten claims addressed by the CCA on direct appeal, will be dismissed as procedurally defaulted and barred from federal habeas review.

### 2.  Inadequate Briefing

Regarding inadequate briefing, the CCA found as follows:

#### II. Undeveloped Arguments

On appeal, Bruce asserts that (1) reversal is required due to improper opinion testimony at trial; (2) the trial court erred in applying relevance and hearsay rules by admitting prosecution evidence and excluding defense evidence; and (3) incomplete jury instructions require reversal.  With respect to each of these contentions, however, Bruce provides no factual or legal analysis.  Instead, he provides lengthy string cites to the record and occasional citations to legal authority, never indicating what the record citations show, why the citations are pertinent, or how the law applies to such evidence.  It is the parties' responsibility to provide such analysis. *Mauldin v. Lowery*, 127 Colo. 234, 236, 255 P.2d 976, 977 (1953) ("It is the task of counsel to inform us, as required by our rules, both as to the specific errors relied on and the grounds and supporting facts and authorities therefor.").  It is not this court's role to try

> to discern an intelligible legal argument based on string citations to the
> record or to legal authority. *See United States v. Dunkel*, 927 F.2d 955,
> 956 (7th Cir. 1991); *Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo.
> App. 2006).
>
> Because Bruce has provided no developed legal or factual
> argument as to the three contentions noted above, we will not consider
> these arguments. *See Dunkel*, 927 F.2d at 956; *Mauldin*, 127 Colo. at
> 236, 255 P.2d at 977; *Castillo*, 148 P.3d at 291.

ECF No. 9-8 at 5-6; *People of the State of Colo. v. Bruce*, No. 12CA0747, 4-5 (Colo.

App. July 16, 2015).

Colorado Appellate Rule 28(a)(4) (2012) requires a brief to state "the contentions

of the appellant with respect to the issues presented, and the reasons therefor . . . ."

The CCA will not review an opening brief on appeal where the brief is insufficient to

advise the court of the issues presented or the merits thereof. *See In re Hays' Estate*,

257 P.2d 972 (1953). Furthermore, in *Mauldin*, the Colorado Supreme Court (CSC)

stated:

> Our Court will not search through briefs to discover what errors are relied
> on, and then search through the record for supporting evidence. It is the
> task of counsel to inform us, as required by our rules, both as to the
> specific errors relied on and the grounds and supporting facts and
> authorities therefor.

*Mauldin*, 255 P.2d at 977.

In his reply, Applicant asserts that the three claims the CCA declined to consider

were not vague. [#21]. Applicant contends further that the claims were "simply deprived

of greater loquacity by the court of appeals imposition of its arbitrary policy, designed

intentionally and unconstitutionally to suppress the due process right to appeal any and

all appealable issues." *Id.* at 8-9.


In Claim IV of his opening appellate brief, Applicant, through counsel, asserts the

claim deals with "rampant opinions about other witnesses, what the law was, and

whether Mr. Bruce was guilty." [#9-1 at 52].  Applicant went on to state

> [t]his includes grand jury findings, opinions of how the law should be interpreted, who was credible, what Mr. Bruce's [sic] was attempting, and that Mr. Bruce was guilty.  Experts are not to instruct the jury on the law or legal standards. . . .
>
> The errors in Mr. Bruce's case are similar to the errors in the above cases.  It was for the jury to determine what was proven and the judge to determine the law and properly instruct the jury.  Grand jury findings and witness opinions should have had no part in this case.  Definitions of charity, lobbying, and requirements reporting donated salary, were for the judge to explain and the jury to decide of [sic] the facts met the law.

*Id.* at 52 and 54.

In Claim Five of the opening brief, Applicant, through counsel, asserts

the claim deals with the "interpretation of relevance and hearsay in the admission of

prosecution evidence and denial of defense evidence."  *Id.* at 56-57.  Applicant went on

to state

> [t]here is no hearsay exception for much of the prosecution's evidence that was admitted concerning statements to the grand jury, witness interviews, and newspaper reports.  However, much excluded defense evidence was admissible.  Statements from others, especially by federal and state tax authorities stating he was giving to a legitimate charity and had reported properly, were admissible to show Mr. Bruce's good faith reliance thereon, to challenge state experts, and as exculpatory evidence that cannot be excluded.

*Id.* at 59.

In Claim Ten of the opening brief, Applicant, through counsel, asserts the claim

deals with

> the jury instructions and argument of there being no intent requirement, no good faith defense, the lack of unanimity requirement for the attempt to influence, and the lack of instructions to allow the jury to decide what was reportable income, what was a charity, whether Mr. Bruce was responsible for the charity, what was lobbying, what the tax exempt status of the charity was, what was evading or defeating a tax, and who had to file a

return. . . .

When a jury could disagree on the reason for conviction, a unanimity instruction is required . . . .

The jury should also have been instructed that the state cannot overrule the IRS tax deductible designation. . . .

*Id.* at 72-73, 74, and 75.

Having reviewed Claims IV, V, and X, I find that none of the claims explicates adequately what the record citations show, why the citations are pertinent, or how the apposite law applies to such evidence.  As a result, these three claims fail to advise the court of the issues presented or the merits of each claim as required by *Mauldin* and C.A.R. 28(a)(4) (2012).  These claims, therefore, are procedurally defaulted for failure to comply with an independent and adequate state rule.

I have considered also whether the Applicant has established either cause for default and actual prejudice or fundamental miscarriage of justice.  *See Demarest*, 130 F.3d at 941 (10th Cir. 1997). For the same reasons found above in addressing hybrid representation and word limits, I conclude that the Applicant has failed to demonstrate that some objective factor external to the defense impeded his efforts to comply with the State's procedural rule or that failure to waive the default will result in a fundamental miscarriage of justice.  Therefore, to the extent that any of the fifty-four claims that Applicant raises in this action, [#14], which claims could be found to restate the issues presented in Claims IV, V and X in the opening brief on direct appeal, are also procedurally defaulted.

### 3.  Claims Not Raised

Applicant presents two claims in this action which raise issues addressed in the opening brief in state court, but which are not supported by the same arguments

presented in the opening brief.  Claim One in this § 2254 action states that Applicant's

Sixth and Fourteenth Amendment rights were violated because at his arraignment he

was denied additional time to obtain counsel and was arraigned over his vocal

objection. [#14 at 2].  In Claim I in the opening brief on appeal, Applicant argued that the

court denied his right to counsel because it failed to inquire whether Applicant had

waived his right to counsel until the morning of the trial.  Applicant, therefore, did not

raise the denial of additional time claim in state court.  Because he failed to do so the

claim is unexhausted.  Pursuant to Colo. R. Crim. P. 35(c)(3)(VII), Claim One would be

denied as successive because Applicant could and should have presented the claim in

his direct appeal.

If it is obvious that an unexhausted claim would be procedurally barred in state

court, the claim is subject to an anticipatory procedural bar, *see Anderson v. Sirmons*,

476 F.3d 1131, 1139 n.7 (10th Cir. 2007) (citation omitted), and is procedurally barred

from federal habeas review, *Steele v. Young*, 11 F.3d 1518,1524 (10th Cir. 1993) (citing

*Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  It is obvious that Claim One

would be procedurally barred in state court.  The claim, therefore, is anticipatorily

defaulted and barred from federal habeas review in this action.

Claim Nine in this action states that there was insufficient evidence because

none of the four sources for taxable income identified by the prosecution was income to

Applicant. [#14 at 7].  In Claim II in the opening brief on appeal, Applicant claimed that

under *Cheek*, evidence was insufficient because there was no proof that he "knew he

had a legal duty to account for and pay and that he knowingly failed to do so." [#9-1 at

38].  For the same reasons stated above, this claim is successive and would be denied

under Rule 35(c)(3)(VII) as anticipatorily defaulted.  Thus, Claim Nine is barred from

federal habeas review.

### 4.  Conclusion

I find that forty-eight of the fifty-six claims raised in this action are either procedurally defaulted as inadequately pled on appeal or as improperly presented due to hybrid representation or word limits or for failure to assert the claim in a state court. The remaining six claims will be addressed below.

### B.  Exhausted Claims

Having reviewed and compared the fifty-six claims presented by Applicant with the ten claims properly presented in Applicant's opening brief on direct appeal and considered by the CCA, I find as follows:

1) Claim Twenty was raised in Claim VIII on direct appeal;

2) Claim Twenty-Eight was raised in Claim III on direct appeal;

3) Claim Thirty was raised in Claim VI on direct appeal;

4) Claim Thirty-One was raised in Claim VII on direct appeal;

5) Claim Thirty-Two was raised in Claim VIII on direct appeal; and

6) Claim Thirty-Three was raised in Claim IX on direct appeal.

To exhaust state court remedies, a claim must be presented to the state's highest court if review in that court is available.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Colorado law provides that

> [i]n all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.  Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1(a).

In his concurring opinion in *O'Sullivan*, Justice Souter provides an example of when state supreme court review is unavailable. *O'Sullivan*, 526 U.S. at 849. The language Justice Souter quotes is taken from a South Carolina Supreme Court decision in *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (1990), and mirrors the language in Colo. App. R. 51.1, in stating a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the court of appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.

Respondents are correct that, in order to exhaust state court remedies, a claim must be presented to the state's highest court if review in that court is available. *See O'Sullivan*, 526 U.S. at 845. However, "nothing in the exhaustion doctrine requir[es] federal courts to ignore a state law or rule providing that a given procedure is not available." *Id.* at 847-48 (citation and internal quotations omitted). If a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue futilely to exhaust state remedies. *See id.*

Furthermore, four circuit courts have concluded that state rules similar to Colo. App. R. 51.1(a) eliminate the need to seek review in the state's highest court to satisfy the exhaustion requirement. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398, 401-04 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 403-05 (8th Cir. 2002); *Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999).

I am not persuaded by Respondents' arguments to the contrary and do not find the Tenth Circuit's comments in *Prendergast v. Clements*, 699 F.3d 1182, 1184 n.2 (10th Cir. 2012), nor the exhaustion discussion in *Vreeland v. Davis*, 543 F. App'x 739 (10th Cir. 2013) (certiorari review was pending), or *Frazier v. Werholtz*, 543 F. App'x 799, 802 (10th Cir. 2013) (defendant had sought certiorari review and not included claim), dispositive for finding that habeas applicants must present federal claims to the CSC.

Review, therefore, in the CSC is not required to exhaust state remedies if the claim in question was presented fairly to and relief was denied by the CCA.  Nothing Respondents present changes the Court's position on Rule 51.1(a).  Accordingly, Claims Twenty, Twenty-Eight, Thirty, Thirty-One, Thirty-Two, and Thirty-Three are deemed exhausted and subject to a review on the merits.  Thus, Respondents will be directed to address these claims on the merits.

### III. Motions to Stay Probation Sentencing

In two duplicate motions [#26 & #30], Applicant requests a stay of his probation revocation proceeding.  Applicant asserts that as of January 26, 2016, he learned the prosecution is seeking to set a date for a resentencing hearing based on Applicant's "technical" probation violation found by the Denver Court.  [#26 at 1].  Applicant also attached a copy of the email from the prosecution that indicates the resentencing hearing may be set as early as February 12, 2016.  *Id.* at 5.

Applicant contends that a sentence would greatly interfere with the processing of this action.  *Id.* at 2.  Applicant requests that he be afforded the same due process he was given in a prior case, where he had filed a federal habeas application and was awaiting a hearing.  *Id.*  Applicant contends in the prior federal habeas action he was

given a hearing, without a "flood of pre-hearing pleadings," and granted habeas relief

within twenty minute of the hearing that "summarily" overturned the conviction.  *Id.*

Applicant further asserts that he will be "greatly impaired in this application if

placed in a prison or jail cell.  He may not be able to attend the evidentiary hearing, nor

to gather evidence for use in that hearing, nor even to communicate with the court."  *Id.*

Applicant contends the presiding state judge has reversed her initial promise in open

court that she would not complete the probation violation hearing or sentence him until

this habeas proceeding was concluded.  *Id.* at 3.

Applicant has asked also for a stay of the pending probation revocation hearings

in other pleadings and papers he has filed in this action.  In the August 10, 2015

Amended Application, Applicant asserts that the basis for his probation revocation

hearing is six petty charges that pertain to only "technical" infractions. [#4 at 22].  He

asserts further that three other charges were added regarding out-of-state properties for

which there is a request for jail time.  *Id.*  Applicant contends the three new charges

were added because the complaint regarding the six charges is "falling apart."  *Id.*

Additionally, Applicant argues that he does not have an adequate forum in state

court to hear the claims he has raised in this action, because the state judge refused to

hear the claims (an apparent reference to those claims that he is raising regarding the

2012 conviction) and closed the testimony in the revocation hearing.  Reply to Supp.,

[#16, at 1-2].  Absent extraordinary or special circumstances, not present here, federal

courts are prohibited from interfering with ongoing state criminal proceedings.  *See*

*Younger v. Harris*, 401 U.S. 37 (1971); *Phelps v. Hamilton (Phelps II)*, 122 F.3d 885,

889 (10th Cir. 1997).  Abstention under *Younger* is jurisdictional in nature, *see D.L. v.*

*Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004), and is appropriate

when three conditions are met:

> First, there must be ongoing state criminal, civil, or administrative proceedings.  Second, the state court must offer an adequate forum to hear the federal plaintiff's claims from the federal lawsuit.  Third, the state proceeding must involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997).  If the three requirements are met, and no exceptions to *Younger* apply, a federal court must abstain from hearing the case.  *See Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001).

The first condition is met because Applicant's probation revocation proceeding is pending.  The second condition is met because nothing in Applicant's Motion demonstrates that the state criminal proceeding is an inadequate forum for review of the pending sentencing hearing.  This is not a situation that Applicant has been resentenced and is subject to a period of incarceration that will be served prior to an opportunity to challenge the resentencing in a federal habeas action.  The resentencing hearing is a separate criminal proceeding from the 2012 conviction and sentence.  Applicant may not request and be granted a stay of the probation revocation hearing so that he may continue to violate his probation without consequences.

Accordingly, the state court proceeding offers Applicant a forum to raise his constitutional challenges and the stay of the probation revocation proceeding would unavoidably invade the state court's ability to decide the same issues.  *See Younger,* 401 U.S. at 43-44; *see also Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-12 (1987) (noting that *Younger* abstention " 'offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional

concerns and state interests' ") (quoting *Moore v. Sims*, 442 U.S. 415, 429-30 (1979))).

The third condition is met because the Supreme Court "has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (citing *Younger*, 401 U.S. at 44-45). Thus, the State has an important interest in the administration of its judicial system, but an even greater interest in the enforcement of its criminal laws. *See Penzoil*, 481 U.S. at 12-13 (citing *Juidice v. Vail*, 430 U.S. 327, 335 (1977).

The three exceptions to *Younger* abstention are (1) "bad faith or harassment," (2) prosecution under a statute that is "flagrantly and patently" unconstitutional, or (3) other "extraordinary circumstances" involving irreparable injury. *Younger*, 401 U.S. at 46-55. The exceptions to *Younger* provide a "very narrow gate for federal intervention." *Phelps v. Hamilton (Phelps I)*, 59 F.3d 1058, 1064 (10th Cir. 1995) (internal quotation marks omitted).

Applicant, however, "may overcome the presumption of abstention 'in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown. . . .' " *Phelps II*, 122 F.3d at 889 (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).  Courts have considered three factors in determining whether a prosecution is commenced in bad faith or to harass:

> (1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through

the unjustified and oppressive use of multiple prosecutions.

*Phelps II*, 122 F.3d at 889 (citing *Phelps I*, 59 F.3d at 1065).  It is Applicant's " 'heavy

burden' to overcome the bar of *Younger* abstention by setting forth more than mere

allegations of bad faith or harassment."  *Phelps I*. 122 F.3d at 890.

Applicant has not satisfied his heavy burden of showing harassment through

oppressive prosecution.  *See Weitzel*, 240 F.3d at 877 (the petitioner's argument that he

had been prosecuted three times did not satisfy his "heavy burden" of showing bad faith

or harassment under *Younger*).  To demonstrate such harassment, the Applicant must

demonstrate that he has faced a "substantial number of prosecutions and that a

reasonable prosecutor would not have brought such multiple charges under similar

circumstances."  *Phelps I*, 59 F.3d at 1066.  Applicant has not satisfied this burden.  His

allegation that there are bad faith purposes behind the probation violation proceedings

are his *ipse dixit* only.  Applicant provides no factual basis to demonstrate that any of

the nine alleged violations of the terms of his probation was brought in bad faith.

Second, "[m]ere allegations of constitutional retaliation will not suffice; plaintiff

must rather allege specific facts showing retaliation because of the exercise of the

prisoner's constitutional rights."  *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.

1990); *see Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (a plaintiff must

demonstrate that the "alleged retaliatory motives were the but for cause of the

defendants' actions") (citation and internal quotation marks omitted).  Applicant fails to

assert specific facts showing that retaliation was the "but for" cause for the filing of the

probation violation complaints against him.

To qualify under the second exception, Applicant must show that the underlying

statute is "flagrantly and patently violative of express constitutional prohibitions in every

clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53-54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)).  Nothing Applicant asserts demonstrates that the apposite statutory scheme is flagrantly and patently unconstitutional.

To establish extraordinary or special circumstances under the third exception, Applicant must be facing an irreparable injury that is both great and immediate.  *See Younger*, 401 U.S. at 46.  Applicant asserts he will be irreparably injured if his probation revocation hearing is not stayed because he may be incarcerated and rendered unable to prepare any needed filings, communicate with the court, or attend an evidentiary hearing in this case.

Applicant's claims are highly speculative and do not establish a factual or legal basis for extraordinary or special circumstances.  The majority of persons convicted and sentenced in state court who challenge their conviction and sentence through an action for habeas corpus are incarcerated and still able to prosecute the habeas actions in federal court.  Applicant, therefore, has failed to show that irreparable injury is great and immediate if he is sentenced to incarceration.

In summary, the motions to stay [#26 & #30] will be denied because the three conditions for abstention under *Younger* exist, and none of Applicant's arguments demonstrates that there is a basis for an exception to *Younger* abstention.

### IV.  Evidentiary Hearing

In the Request for Clarification of Magistrate's order [#26], the Applicant challenges, at least in part, the denial of his request for a hearing in this habeas proceeding.  His request for a hearing was denied as premature. Minute Order [#25].  An evidentiary hearing is unnecessary if the claims can be resolved on the record.  *See*

*Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).  Here, the state court record is not yet before the court to assist in determining the merits of the remaining six claims. Therefore, as found in the January 19, 2016, Minute Order, [#25], a request for a hearing continues to be premature.

### V.  Orders

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Motion to Stay Probation Sentencing and Request for Clarification of Magistrate's Order** [#26], is denied;

2.  That the **Motion to Stay Probation Sentencing and Request for Clarification of Magistrate's Order** [#30], is denied;

3.  That by March 17, 2016, Respondents shall file an answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of Claims Twenty, Twenty-Eight, Thirty, Thirty-One, Thirty-Two, and Thirty-Three;

4.  That the remaining forty-eight claims are dismissed because they are procedurally defaulted and barred from federal habeas review;

5.  That within thirty days of the filing of an answer by Respondents, Applicant may file a reply;

6.  That by March 17, 2016, Respondents shall file with the clerk of the court, in electronic format if available, a copy of the complete record of Applicant's state court proceedings in Case No. 11CR10091, including all documents in the state court file and transcripts of all proceedings conducted in the state court, but excluding any physical evidence (as opposed to documentary evidence) not relevant to the asserted claims; and

7.  That the clerk of the court shall serve copies of this order to the following:

(1)   Clerk of the Court
      Denver County District Court
      1437 Bannock Street
      Denver, Colorado 80202; and

(2)   Court Services Manager
      State Court Administrator's Office
      101 W. Colfax, Ste. 500
      Denver, Colorado  80202.

Dated February 17, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge