**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Robert E. Blackburn**

Civil Action No. 15-cv-01653-REB

DOUGLAS EDWARD BRUCE,

      Petitioner,

v.

MARIANNE CLEMENTI, Probation Officer,
STATE OF COLORADO, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

---

**Blackburn, J.**

    This matter is before me on the *pro se* **Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody** (Petition) [#13][1] and **Petitioner's Amended Section 2254 Petition and Attachments** (Supplement) [#14] filed on October 7, 2015, by petitioner Douglas Bruce.   The respondents filed an answer [#33]. The petitioner did not respond to the answer.

    After reviewing the pertinent portions of the record in this case, including the Petition, the Supplement, the answer, and the state court record [#34], I conclude that the Petition and Supplement should be denied and this action dismissed.

---

[1][#13] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).   I use this convention throughout this order.

# I. Background

Petitioner is challenging the validity of his conviction and sentence in Denver County District Court case number 11CR10091   The factual background of petitioner's crimes and conviction is summarized in the Colorado Court of Appeals' (CCA's) direct appeal opinion as follows:

> In 2001, Bruce established Active Citizens Together (ACT), a Colorado nonprofit corporation that he controlled.

> In April 2006, Bruce filed his Colorado individual income tax return for the 2005 tax year.   The return showed no taxable income, despite the fact that Bruce had earned wages of nearly $40,000, and he requested a refund of $1670.   One month later, the Colorado Department of Revenue (the Department) sent Bruce a letter informing him that his return had been selected for examination and requesting that he submit documentation substantiating the figures on his return within thirty-one days.

> Bruce did not immediately respond to the Department's letter, and he did not file Colorado individual income tax returns for the 2006 and 2007 tax years.

> In April 2009, Bruce responded to the Department's May 2006 request for documentation.   Bruce informed the Department that despite receiving a salary, he had no taxable income in 2005 because he had donated more than the amount of his salary to ACT.

> Upon review of Bruce's documentation and further Case investigation, the Department discovered numerous discrepancies, including the following:

> > Bruce deposited almost $2,000,000 into ACT's account, which apparently accrued substantial interest, but neither Bruce's nor ACT's tax returns reported such interest. In a conversation with a Department investigator, Bruce characterized a large deposit from him to ACT as a loan.

> > Bruce used ACT funds for personal purposes.

> > ACT engaged in substantial lobbying activities, contrary to its tax exempt nonprofit status.

Based on its review and investigation, the Department determined that Bruce's 2005 tax return was materially false because it did not include all of Bruce's income.

Subsequently, a grand jury indicted Bruce for (1) tax evasion; (2) filing a false tax return; (3) attempting to influence a public servant, based on Bruce's April 2009 response to the Department's May 2006 inquiry; and (4) failing to file a tax return or to pay tax. The case proceeded to a jury trial, and the jury convicted Bruce as charged.

[#9-8 at 2-3].

Petitioner initiated this action on August 3, 2015. I conducted a preliminary review and dismissed all claims as procedurally barred from federal habeas review, except for Claims Twenty, Twenty-Eight, Thirty, Thirty-One, Thirty-Two, and Thirty-Three. [#31]. The claims for relief that remain are

(20) Trial court openly sided against Petitioner during the trial by making derogatory remarks about Petitioner's witnesses;[2]

(28) Criminal charges are arbitrary and capricious when a civil resolution is available for the same action;

(30) Prosecution improperly informed the jury about a pretrial motion Petitioner filed regarding the statute of limitations on felony prosecutions;

(31) "The AG engaged in scurrilous personal attacks on petitioner throughout the trial to inflame juror passions" by stating Petitioner is notorious, a charlatan, outrageous, a diatribe, and infamous;

(32) Trial court denied Petitioner's presentation of character evidence from two Colorado congressmen; and

(33) Trial court denied Petitioner's redirect of his own testimony.

---

2 Claim Twenty in the Amended Section 2254 Petition and Attachments, [#14], raises two issues, cumulative testimony by two congressman and the derogatory remarks by the court. Because Claim Thirty-Two also addresses the cumulative testimony issue, I read Claim Twenty to address only the derogatory remarks claim.

## II. Analysis

### A.  Standard of Review

I must construe the Petition and Supplement liberally because the petitioner is not represented by an attorney.  ***See Haines v. Kerner***, 404 U.S. 519, 520 (1972); ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I cannot act as an advocate for a *pro se* litigant.  ***See Hall***, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  ***See Cook v. McKune***, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question pursuant to § 2254(d)(1) is whether the petitioner seeks to apply a rule of law that was clearly established by the Supreme Court of the United States at the time his conviction became final.  ***See Williams v. Taylor***, 529 U.S. 362, 390 (2000).  The "review under § 2254(d) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits."  ***Cullen v. Pinholster***, 563 U.S. 170, 181 (2011).  "Finality occurs when direct state appeals have been exhausted and a petition for writ of certiorari from this Court has become time barred or has been disposed of."

4

*Greene v. Fisher*, 565 U. S. 34, 39 (2011) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321, n. 6 (1987).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or

unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply. *Carter* [*v. Ward*], 347 F.3d. [860,] 864 [10th Cir. 2003] (quoting *Valdez* [*v. Ward*], 219 F.3d [1222] 1229-30 [10th Cir. 2000]).

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

*See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671 (internal quotation marks omitted). In addition,

evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). I "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary

6

error correction through appeal." *Id.* at 102-03 (internal quotation marks and citation omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671. Furthermore,

> [a]s a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

I review claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, *see Sumner v. Mata*, 455 U.S. 591, 592-93 (1982), and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence, *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.' " *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

A claim, however, may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an

unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning"). Further, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

In other words, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his independent review should be distinguished from a full de novo review of the petitioner's claims." *Id.* (internal quotation marks and citation omitted). Likewise, I apply the AEDPA deferential standard of review when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the petitioner as the federal standard. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

**B. Merits of Claims**

**1. Claim Twenty**

Petitioner asserts that the trial judge announced in front of the jury that the petitioner's witnesses, two of which were sitting members of Congress, would not be

allowed to testify because their testimony would be "cumulative" and of "little value." [#14 at 13]. Petitioner further asserts that he has a right to call witnesses under the Sixth and Fourteenth Amendments. [*Id.*] He also contends that when a judge makes derogatory remarks about defense witnesses in front of a jury the jury is rendered partial. [*Id.*]

I will address the issue of cumulative evidence when resolving Claim Thirty-Two. The derogatory remark claim is discussed below and is dismissed for the following reasons.

I find, having now had the opportunity to examine the trial transcripts, that the derogatory remark claim has not been exhausted. Nonetheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Given this discretion, I will discuss the merits of this claim below.

To the extent petitioner's derogatory remark claim is asserted pursuant to the Fourteenth Amendment and construed as a due process claim, it is well established that the denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. State of Cal.*, 314 U.S. 219, 236 (1941). In order to declare a denial of due process, the court must find that "the absence of that fairness fatally infected the trial." *Id.*; *see also Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991) (due process claims entitle petitioner to relief only if the alleged errors rendered the trial as a whole fundamentally unfair).

Nothing in the trial transcript supports a finding that this comment was a derogatory remark that rendered the jury no longer impartial. *See* Dec. 16, 2011 (P.M.) Trial Tr. at

126-179.   The trial judge denied petitioner's request to have the two congressmen testify because petitioner had four previous character witnesses testify and the congressmen's testimony would be cumulative.   The trial judge made no other remarks regarding the congressmen in front of the jury.   Because petitioner's claim is highly speculative and not supported by the record, there is no basis to find that the trial was fatally infected by any alleged derogatory remarks made by the trial judge about the two congressmen who were not allowed to testify or, for that matter, made by the trial judge concerning any of the defense witnesses.   Claim Twenty will be dismissed on the merits.

### 2. Claim Twenty-Eight

Petitioner asserts that criminal charges are arbitrary and capricious when a civil resolution is available for the same action.   [#14 at 17].   Petitioner further asserts that a statute violates equal protection and due process if a separate statute covers the identical conduct but has lower penalties.   [*Id.*]   Petitioner also contends that there was no valid state interest in choosing a criminal resolution, other than the state opposed petitioner's political views and activities.   [*Id.*]

In the opening brief on appeal, petitioner argues as follows with respect to this claim.

> A statute violates equal protection if a separate law covers the identical conduct but has lower penalties, even if different acts could potentially be covered.   *See, e.g., People v. Marcy*, 628 P.2d 69, 80 (Colo. 1981) (invalidating extreme indifference first degree murder as indistinguishable from second degree murder); *People v. Calvaresi*, 534 P.2d 316, 318-319 (Colo. 1975) (then existing manslaughter violated equal protection since practically identical to criminally negligent homicide); *People v. Dominquez*, 568 P.2d 54, 55 (Colo. 1977) (conviction for first degree assault reversed due then existing statute being basically identical to second degree assault).

The tax evasion statute does not define what is mean [sic] by evading or defeating a tax and how that can be differentiated from legal activity to minimize taxes in naming deductions. In addition to the criminal statutes which were charged, others call for civil administrative procedures for identical acts. *See* § 39-21-104, C.R.S. (penalty for a frivolous refund claim is denial of a hearing); § 39-21-104. 5, C.R.S. (interest and penalties due for frivolous hearing request); § 39-21-106, C.R.S. (executive director has authority to compromise civil and criminal cases); § 39-22-601, C.R.S.

Most importantly are § 39-22-602, C.R.S. and § 39- 22-603.5, C.R.S. § 39-22-602(1), C.R.S. provides:

If any person fails or refuses to make any return required by this article, the executive director may make such return for such person from such information as may be available, and any assessment based on such return made by the executive director shall be as good and sufficient as if such return had been made and filed by the person liable therefor.

§ 39-22-603. 5(2) (a) and (b), C.R.S. state

If any person files a frivolous return, the executive director may calculate the person's Colorado taxable income and make an assessment based on such information as is available at the time the return is filed. .and

If the tax calculated by the executive director is greater than the amount theretofore assessed or paid, a notice of deficiency shall be mailed to the taxpayer . . . [.]

[Section] 39-22-603.5(1), C.R.S. defines "frivolous returns" in part as not having "information on which the substantial correctness of the return may be judged;" having "information that on its face indicates that the return is substantially incorrect;" [sic] and due to a "position that is frivolous" or having a "desire, which appears on the purported return, to delay or impede the administration of the state income tax laws."

These give no guidance as to who should be given civil sanctions versus criminal. There is no difference other than the word order and synonyms being used in the conduct of the civil and criminal statutes. Of course, the penalties of civil finding and money due are greatly different than felony and misdemeanor convictions, probation and incarceration. Even more so than identical but different level criminal penalties being invalid, identical criminal versus civil penalties at the whim of a single government official without guidance cannot stand. This is particularly

apparent in this case considering the scarcity of state criminal tax prosecutions, the admission by a government investigator that Mr. Bruce was first looked into because of statements during a political campaign, and that much evidence focused on giving money in connection with ballot initiatives.   With no attempt at the civil remedies, dismissal of the criminal charges still allows for civil resolution.

[#9-1 at 47-49].

The Colorado Court of Appeals addressed Claim Twenty-Eight as follows:

### C. Equal Protection

The constitutional guarantee of equal protection prohibits punishing identical criminal conduct with disparate penalties.   *People v. Clanton*, 2015 COA 8, ¶ 26, __ P.3d __, __.

Bruce argues that his equal protection rights were violated because the criminal statutes at issue prohibit the same conduct that is subject to civil remedies.   *See, e.g.*, § 39-22-602(1), C.R.S. 2014 (allowing the executive director of the Department to make a return that is required of any person by article 39 of the Colorado Revised Statutes and to impose an assessment based on such a return); § 39-22-603.5(2)(a), C.R.S. 2014 (allowing the executive director of the Department to calculate a person's taxable income or to make an assessment based on the available information if the person files a frivolous tax return).   However, "[t]he government may subject an individual to both criminal and civil sanctions with respect to the same acts or omissions."   *Deutschendorf v. People*, 920 P.2d 53, 56 (Colo. 1996) (applying this principle to a double jeopardy claim); *see also State v. Ankney*, 766 P.2d 1131, 1132-33 (Wash. Ct. App. 1989) (applying the same principle to an equal protection claim).   Bruce has cited no authority to the contrary, and we have seen none.

Accordingly, an as-applied equal protection violation, if any, was not obvious and, therefore, did not constitute plain error.   *See McClelland*, ¶ 16, --- P.3d at ---.

[#9-8 at 19-20].

The Supreme Court of the United States has found that "Congress may impose

both a criminal and a civil sanction in respect to the same act or omission."   *United*

*States v. Ward*, 448 U.S. 242, 250 (1980)) (quoting *Helvering v. Mitchell*, 303 U.S. 391,

399 (1938)). The Colorado Court of Appeals relied on **Deutschendorf** for its finding that a government may subject an individual to both criminal and civil sanctions with respect to the same acts or omissions. In **Deutschendorf** , the Colorado Supreme Court based its decision on the case law in **Helvering**, which included the finding that a government may subject an individual to both criminal and civil sanctions when same acts or omissions are involved.

The AEDPA deferential standard of review is properly applied here because the Colorado Court of Appeals adjudicated the claim based on state case law that cited to and relied on applicable federal case law. **See Harris**, 411 F.3d at 1196. I find the decision of the Colorado Court of Appeals regarding petitioner's equal protection claim neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim Twenty-Eight, therefore, will be denied for lack of merit.

### 3. Claim Thirty

Prior to his criminal trial, petitioner filed a motion to challenge the indictment. He argued the indictment was filed outside of the applicable three-year statute of limitations. The motion was denied because the applicable period of limitations was longer than three years and had not lapsed. Petitioner asserts that he has a right to challenge the indictment, even if he did so erroneously. [#14 at 18]. Petitioner further asserts that he believed the three-year statute of limitations of felony prosecutions applied to his case and was the basis for filing a motion to challenge the indictment. [**Id.**] Petitioner

contends that his due process rights were violated when the prosecution told the jury about his "privileged defense motion." [**_Id._**]

The Colorado Court of Appeals addressed this claim as follows:

### VI. Evidence of Bruce's Motion to Dismiss

Bruce contends that the trial court plainly erred in allowing the prosecution to cross-examine him with his pretrial motion to dismiss, on limitations grounds, the charges against him. (He did not object to this cross-examination.) We are not persuaded.

As we have observed, plain error addresses error that is both obvious and substantial and that so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. [**_People v._**] **_Miller_**, 113 P.3d [743,] at 750 [(Colo. 2005)].

Here, Bruce's motion to dismiss was relevant because it tended to explain why he had waited approximately three years to respond to the Department's inquiry about his 2005 tax return, and it suggested willful behavior on his part. **_See_** CRE 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

Bruce nonetheless argues that the motion was inadmissible pursuant to **_Simmons v. United States_**, 390 U.S. 377 (1968). In **_Simmons_**, the Supreme Court held that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his or her testimony may not thereafter be admitted at trial on the issue of guilt unless he makes no objection. **_Id._** at 394. The Court reasoned:

> [I]n this case [the defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self- incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another.

_Id._

Bruce argues that, by extension, a defendant's _pro se_ motion cannot be admitted as evidence against him or her, because the admission of such evidence would require the defendant to surrender the privilege against self-incrimination in order to assert the right of self-representation. Bruce,

however, cites no authority for so extending the *Simmons* holding, and we have seen none.   To the contrary, at least one court has declined so to extend *Simmons's* holding.   *See People v. Kiney*, 60 Cal. Rptr. 3d 168, 172-73 (Cal. Ct. App. 2007) (concluding that the trial court did not err in admitting statements that the defendant made in closing argument when representing himself in his first trial, and rejecting the defendant's assertion that he was put in the intolerable position of having to surrender his right against self-incrimination in order to assert the right of self-representation).

Moreover, *Simmons* does not preclude the prosecution from using a defendant's pretrial testimony for impeachment purposes.   *See People v. Rosa*, 928 P.2d 1365, 1371 (Colo. App. 1996).   Here, the prosecution appears to have used Bruce's motion to impeach his testimony that he believed he had three years to file his tax returns.

Accordingly, any error in the trial court's allowing the prosecution to use Bruce's pretrial motion as evidence against him was not obvious and, therefore, did not constitute plain error.   *See McClelland*, ¶ 16, --- P.3d at ---.

[#9-8 at 20-23].

The Tenth Circuit in *United States v. Hardwell*, 80 F.3d 1471, 1483 (10th Cir.

1996), addressed *Simmons* as follows.

In *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court held that a defendant's testimony at a suppression hearing to establish standing to object to a search cannot be used against him at trial to establish guilt because otherwise, the defendant would be required to choose between the Fourth Amendment right to be free from unreasonable searches and the Fifth Amendment right against self-incrimination.   The Court has limited *Simmons* in some respects, *see McGautha v. California*, 402 U.S. 183, 211, 212, 91 S. Ct. 1454, 1469, 1469–70, 28 L. Ed.2d 711, (1971), but has not ruled on whether statements made by a defendant to establish eligibility for appointed counsel are admissible at trial as proof of guilt.   *See United States v. Kahan*, 415 U.S. 239, 242–43, 94 S. Ct. 1179, 1180–81, 39 L. Ed.2d 297 (1974).

In *Hardwell,* the Tenth Circuit extended *Simmons* to find pretrial protection

necessary to resolve the conflict between Fifth and Sixth Amendment rights, when the

government used defendant's financial affidavit and other statements to establish

eligibility for appointment of counsel to prove guilt at trial. *Hardwell*, 80 F.3d at 1484. Nonetheless, in *United States v. Kahan*, the Court held that the "protective shield of *Simmons* is not to be converted into a license for false representations." 415 U.S. 239, 243 (1974).

Unlike *Simmons*, Claim Thirty does not assert petitioner was forced to choose between the Fourth Amendment right to be free from unreasonable searches and the Fifth Amendment right against self-incrimination. Nor does this claim address a conflict between the Fifth and Sixth Amendment rights. Here, petitioner is claiming that he has a federal constitutional right to file a pretrial motion to dismiss and the prosecution violated his due process rights when the prosecution told the jury about his privileged defense motion.

Based on *Simmons*, and any U.S. Supreme Court case that addressed and possibly extended *Simmons*, there is no clearly established rule of law, which existed at the time petitioner was tried and convicted, that would support petitioner's claim of a federal constitutional right to file a pretrial motion to dismiss and that would preclude the prosecution from telling the jury about petitioner's defense motion. Without a clearly established rule of law, that is the end of my inquiry pursuant to § 2254(d)(1). *See Williams*, 529 U.S. at 390.

Even if I were to consider this claim as a general due process challenge, the claim would fail. To assert a denial of due process claim, a petitioner must show that "because of the court's actions, his trial, as a whole, was rendered fundamentally unfair." *Tapia v. Tapia*, 926 F.2d at 1557. I do not find that petitioner's trial was rendered fundamentally unfair when the prosecution cross-examined petitioner about his motion to dismiss on

petitioner's cross-examination to challenge his asserted belief that he had an additional three years to file his taxes.

Petitioner fails to present clear and convincing evidence based on the trial court record that would invalidate the CCA's finding and would support a finding that the motion was for any other purpose than impeachment of petitioner's testimony. Nothing petitioner asserts in support of this claim demonstrates his trial, as a whole, was rendered fundamentally unfair because the prosecution used his motion to dismiss, on cross-examination, to impeach his testimony on direct.

I find the CCA's decision regarding petitioner's **Simmons** and due process claims neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim Thirty, therefore, will be denied for lack of merit.

### 4. Claim Thirty-One

Petitioner asserts that the prosecution engaged in "scurrilous personal attacks on petitioner throughout the trial to inflame juror passions" by using such words as "notorious, charlatan, outrageous, diatribe, infamous" and by "reciting alleged political statements" made by petitioner. [#14 at 18]. Petitioner further asserts that the prosecution also referred to (1) a "false charge" that he had "kicked" a photographer; (2) a 2010-11 false political finding that ACT, founded in 2001, should have filed as a campaign committee; and (3) a series of loans made to applicant's terminally ill mother. [*Id.*].

Petitioner also contends that the trial was a "circus," and was an attack on "a political figure who was despised in government circles . . . ."   [#14 at 19].

In his opening brief on direct appeal to the CCA, petitioner argued that the prosecutor may not use emotional or offensive language to inflame the passions of the jury.   [#9-1 at 63].   Petitioner, however, concedes that the comments during the jury selection were not a result of the prosecution's actions.   [*Id.* at 64-65].   Petitioner further argued there was no justification for (1) calling him notorious and a charlatan; (2) stating he had a big mouth; acted outrageously, was on a diatribe, engaged in infamous transactions; (3) repeating petitioner's controversial political statements; and (4) comparing him to a cheating athlete. [*Id.* at 65].   Petitioner also argued that there was no legitimate reason to (1) attack his giving a loan to his mother rather than a gift when she was terminally ill; (2) attack his overall charitable nature; (3) question his past political statements; (4) mention "the charity getting sued and fined"; (5) raise on cross-examination of a witness that petitioner was censured by the state legislature; and (6) ask on cross-examination about petitioner being censured by the legislature.   [*Id.*].

The CCA addressed the relevant parts of Claim Thirty-One as follows:

### VII. Personal Attacks

Bruce contends that personal attacks on him by venire members, witnesses, and prosecutors require reversal.   We are not persuaded.

As an initial matter, we note that Bruce again supports this argument with a string cite to the record, without providing much factual or legal analysis.   We will address only those arguments for which Bruce has provided at least minimal analysis.

## A. Standard of Review and Applicable Law

\*   \*   \*   \*

With respect to the alleged personal attacks by the prosecutor, the determination of whether a prosecutor's statements were improper is generally a matter for the exercise of the trial court's discretion. ***See People v. Samson***, 2012 COA 167, ¶ 28, 302 P.3d 311, 316.

When a defendant objected to the prosecutor's comments during trial, we review the trial court's ruling under a harmless error standard. ***Id.*** Under this standard, we must reverse if there is a reasonable probability that the defendant could have been prejudiced by the error. ***Id.***

When a defendant did not object at trial to the prosecutor's statements, we review appellate allegations of prosecutorial misconduct under the plain error standard. ***People v. McMinn***, 2013 COA 94, ¶ 58, --- P.3d ---, ---. To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. ***Id.*** Prosecutorial misconduct in closing argument rarely constitutes plain error. ***Id.***

In reviewing a claim of prosecutorial misconduct, we engage in a two-step analysis. ***Samson***, ¶ 29, 302 P.3d at 316. First, we must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances. ***Id.*** Second, we must consider whether such actions warrant reversal according to the proper standard of review. ***Id.*** Each of these steps is analytically independent of the other. ***Id.***

We must evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. ***Id.*** at ¶ 30, 302 P.3d at 316. In doing so, we recognize that prosecutors have wide latitude in the language and style they choose to employ, as well as in replying to an argument by or on behalf of a defendant. ***Id.*** at ¶ 30, 302 P.3d at 317. In addition, because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful. ***Id.***

Prosecutors may comment on the evidence admitted at trial and the reasonable inferences that can be drawn therefrom. ***Id.*** at ¶ 31, 302 P.3d at 317. They may also employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance. ***Id.*** Prosecutors may not,

however, use arguments calculated to inflame the passions and prejudices of the jury.   *Id.* at ¶ 32, 302 P.3d at 317.

\* \* \* \*

## C. "Notorious"

Bruce argues that the trial court plainly erred in allowing a witness to say that Bruce was "fairly notorious" with respect to his political activities. This testimony, however, was elicited by Bruce, apparently as part of an effort to demonstrate that the witness, an investigator with the attorney general's office, was biased against him.   Moreover, Bruce did not object to the witness's statement or request a curative instruction.

In these circumstances, we conclude that any error was invited. *See People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989) ("[A] party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts.").   Even if error were not invited, however, we perceive no plain error because when read in context, the witness's statement indicated nothing more than that Bruce was known for his political activities, which is indisputably true.   *See Webster's Third New International Dictionary* 1545 (2002) (defining "notorious" as "being or constituting something commonly known: well known").   We cannot say that such a comment so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of the judgment of conviction.   *See Miller*, 113 P.3d at 750.

## D. "Charlatan"

Bruce argues that the trial court plainly erred in allowing the prosecution to compare him to the Wizard of Oz, who, when the curtain was pulled back, was revealed to be nothing more than a charlatan, manipulating a scheme that was designed to benefit him. (Bruce did not object to this argument.)   As the People observe, however, prosecutors are granted wide latitude to use such rhetorical devices and engage in oratorical embellishment.   *Samson*, ¶¶ 30-31, 302 P.3d at 317. Moreover, we cannot say that this comment was so flagrant or glaringly improper as to rise to the level of plain error.   *See McMinn*, ¶ 58, --- P.3d at ---.

## E. Loan to Mother

Bruce argues that the trial court plainly erred in allowing the prosecution to question him on his loaning money to his mother for her care, rather than giving her the money as a gift.   The record shows, however, that Bruce himself raised the issue of having loaned his mother the money,

and when the prosecution asked about giving her a gift, Bruce responded by accusing the prosecution of saying that Bruce had cheated his mother, although the prosecutor had said no such thing.

Because Bruce himself raised the issue of the loan and suggested an inference that he had cheated his own mother, we conclude that any error either was invited or was not plain.   *See Miller*, 113 P.3d at 750; *Zapata*, 779 P.2d at 1309.

### F. Bruce's Charitable Giving

Bruce argues that the trial court plainly erred in allowing the prosecution to question him about whether he made donations to any entity besides ACT.   The record suggests, however, that such questions reflected a proper attempt by the prosecution to show that Bruce's donations to ACT were not, in fact, legitimate charitable donations.   In any event, we fail to perceive how these questions harmed Bruce or undermined the trial's fairness, because Bruce testified in response that he had made donations to other charities, and this evidence was helpful to him.

### G. Lawsuit against ACT

Bruce argues that the trial court plainly erred in allowing the prosecution to question him about ACT's involvement in litigation as a defendant and the fact that it was fined by an administrative law judge. Again, we perceive no plain error because the questioning concerned Bruce's many dealings with ACT in 2010, including his real estate transactions with ACT and his involvement in ACT's dissolution, which were directly relevant to the issues presented in this case.

[#9-8 at 23-30].

The clearly established federal law relevant to a constitutional claim challenging a prosecutor's allegedly improper comments is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986).   *See Parker v. Matthews*, 567 U.S. 37, ___, 132 S. Ct. 2148, 2153 (2012) (per curiam).   In *Darden*, the Supreme Court explained that a prosecutor's improper comments violate the Constitution only when the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"   *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,

643 (1974)). In order to determine whether prosecutorial misconduct rendered the trial fundamentally unfair, the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.' " *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Federal law clearly provides that in order to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. *Donnelly*, 416 U.S. at 645.

The Supreme Court has established rules that govern a petitioner's prosecutorial misconduct claims. "Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting *Donnelly*, 416 U.S. at 643). "Alternatively, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right (rather than the general due process right to a fair trial), a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair." *Le*, 311 F.3d at 1013. Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. *See Caldwell v. Mississippi*, 472 U.S. 320, 338 (1985) (plurality opinion).

My inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding. *Donnelly*, 416 U.S. at 643. The complained-of remarks or arguments must be considered in the context in which they were made. *Greer v. Miller*,

483 U.S. 756, 765-66 (1987); **see also Darden**, 477 U.S. at 179.   In evaluating improper remarks made by the prosecutor, the Tenth Circuit has stated that:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution . . . .   We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements . . . .   When a prosecutor responds to an attack made by defense counsel.   We evaluate that response in light of the defenses argument   . . . .   Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

**Fero v. Kerby**, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotation marks and citations omitted).

I also must consider the prejudice to petitioner, if any, that results from the prosecutor's comments.   **Brecheen v. Reynolds**, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing **Mahorney v. Wallman**, 917 F.2d 469, 472-73(10th Cir. 1990)).

Colorado's plain error test is rooted in due process.   **See People v. Kruse**, 839 P.2d 1, 3 (Colo.1992) ("Plain error occurs when . . . the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.") (internal quotation marks and citation omitted).   Because there is no practical distinction between Colorado's plain error test and the federal due process test that requires reversal when error "so infused the trial with unfairness as to deny due process of law," **Estelle v. McGuire**, 502 U.S. 62, 75 (1991) (internal quotation marks and citation omitted), the deferential standard of review applies unless the CCA unreasonably applied federal due process law, **see Thornburg v. Mullin**, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (citing 28 U.S.C. § 2254(d)).   I must defer to its ruling unless it

"unreasonably appli[ed]" that test.   *Id.* (citing 28 U.S.C. § 2254(d)); **see also Dockins v. Hines**, 374 F.3d 935, 940 (10th Cir. 2004).

State court factual findings, including credibility findings, are presumed correct, absent clear and convincing evidence to the contrary.   **See** 28 U.S.C. § 2254(e)(1); **see also Marshall v. Lonberger**, 459 U.S. 422, 431-34 (1983).   Petitioner has not demonstrated that the factual findings of the state court are clearly and convincingly incorrect.   Petitioner's allegations in Claim Thirty are general statements.   Petitioner does not refer to any portion of the record that would provide clear and convincing evidence of prosecutorial misconduct that rose to the level of a violation of petitioner's due process rights in support of each general statement.

To the extent the transcript citations in petitioner's opening brief on direct appeal pertain to the prosecutorial misconduct allegations that he raises in Claim Thirty-One, I have reviewed the transcript for each of these citations.   **See** [#9-1 at 62-63].

First, the reference by petitioner to the trial transcript in his direct appeal regarding the use of the word "notorious" was by a defense witness, (criminal investigator for the attorney general's office who also entered an appearance as a witness in the prosecution case), during direct examination by petitioner.   **See** Dec. 19, 2011 Trial Tr. Part 1 at 35. The CCA's finding that petitioner solicited the witness's remarks is well founded in the transcript.   It also is noteworthy that petitioner defined "notorious" as meaning unsavory, when he questioned the witness, but the witness defined notorious as meaning "has notoriety" or the same as "well-known."   *Id.* at 36.   Nothing petitioner presents in the Petition or Supplement in this case or in his direct appeal before the CCA supports a

finding that the prosecution or "AG" engaged in personal attacks by scurrilous personal attacks, that rendered the entire trial fundamentally unfair.

The use of the word, "charlatan," as identified by petitioner in his direct appeal, was during the prosecution's closing argument. *See* Dec. 21, 2011 (A.M.) Trial Tr. at 12. The trial court instructed each of the juror's that the closing arguments are not evidence. *See* Dec. 8, 2011 Trial Tr. at 235. Jurors are presumed to follow the instructions given and give less weight to counsel's arguments. ***See Weeks v. Angelone***, 528 U.S. 225, 234 (2000); ***Boyde v. California***, 494 U.S. 370, 384 (1990) (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court").

Even if the prosecutor's comment was improper, it did not infuse the trial with unfairness and result in a denial of due process of law. The comment was fleeting, based on argument not evidence, and does not provide a basis for finding the jury was unable to fairly judge the evidence in light of the prosecutor's conduct.

The use of the word, "outrageous," was identified by petitioner in his direct appeal in support of his personal attacks claims, but the claim was not addressed by the CCA because the CCA stated that "[w]e will address only those arguments for which Bruce has provided at least minimal analysis." [#9-8 at 23]. The deferential standards of § 2254(d), therefore, do not apply. ***See Gipson***, 376 F.3d at 1196.

During the direct examination of a prosecution witness, a special agent with the Colorado Department of Revenue, the witness asserted that it was outrageous that a $2 million loan did not appear in a bank account for the Active Citizens Together (ACT), 501(c)(3) charity, which had been established by Douglas Bruce, and the only assets at the end of 2005 in the ACT account was $84,000. Dec. 12, 2011PM Trial Tr. at 149;

25

Dec. 13, 2011AM at 90-113.    The special agent was offered as an expert in the area of accountancy and taxation.    Dec. 12, 2011 (P.M.) Trial Tr. at 156.    Based on the evidence submitted by the special agent that a $2 million loan to ACT was not accounted for in ACT's bank account or the charity's tax statement (990 and 990-EZ forms), an inference by an expert witness that this is outrageous would not be inappropriate.

Even if the comment by the special agent was in some way solicited by the prosecution, based on the evidence, the comment did not infuse the trial with unfairness and result in a violation of petitioner's due process rights.

The use of the word, "diatribe," was identified by petitioner in his direct appeal in support of his personal attacks claims, but the claim was not addressed by the CCA. The deferential standards of § 2254(d), therefore, do not apply.    *See Gipson*, 376 F.3d at 1196.    During the cross-examination of petitioner, the prosecution stated that petitioner "was going into [his] diatribe," after the prosecution had asked a question and petitioner had answered but continued to respond.    Dec. 20, 2011AM Trial Tr. at 37. The court ordered the word stricken and told petitioner that he had answered the prosecution's question and for the prosecution to go on to the next question.    *Id.*    The reference to a diatribe was a fleeting statement and being stricken would be disregarded by the jury.    The comment did not infuse the trial with unfairness.    No violation of petitioner's due process rights occurred due to the diatribe reference.

The prosecution's reference to the "infamous Dunamis note" during the cross-examination of petitioner also was a fleeting statement and did not infuse the trial with unfairness.    Dec. 20, 2011 (A.M.) Trial Tr. at 87.    This statement did not violate petitioner's due process rights.

Petitioner's other claims that the prosecution improperly referred to (1) a false charge of kicking a photographer; (2) a 2010-11 false political finding that ACT, an entity founded in 2001, should have filed as a campaign committee; and (3) a series of loans made to petitioner's terminally ill mother are also without merit.

First, petitioner did not raise a specific claim in his direct appeal in state court about the prosecution referring to a 2008 finding by House of Representatives that petitioner had kicked a photographer. [#9-1 at 65-66]. In general, petitioner asserted in his direct appeal that the prosecution on cross-examination of petitioner's witness, who testified to petitioner's honesty, asked the witness if he was aware that the state legislature had censured petitioner. [*Id.*]. The prosecution's question was fleeting and vague. Based on the evidence, the question regarding the censure did not infuse the trial with unfairness and result in a violation of petitioner's due process rights

The claim regarding the ACT's failure to file as a campaign committee is relevant to the status of ACT and the entity's actions during the time at issue, which petitioner has failed to assert how this information was not directly relevant. As for the loan to petitioner's mother, like the CCA found, petitioner was the one who stated he had loaned money to his mother, and then, when the prosecution responded to petitioner's statement by asking if he had indeed loaned his mother money, petitioner accused the prosecution of saying that he was cheating his mother. Dec. 20, 2011 (A.M.) Trial. Tr. at 53-54. Petitioner invited the questioning. The prosecution's questioning regarding ACT's status and the loans to petitioner's mother are not error, and, therefore, not appropriate to be considered under a plain error evaluation.

Petitioner's final statement in support of Claim Thirty-One that the trial was a "circus," and was an attack on "a political figure who was despised in government circles . . ." fails to present any specific acts of malicious prosecution.

As for the juggling of balls in front of the jury during the prosecution's rebuttal closing argument, *see* Dec. 21, 2011 Trial Tr. at 44, nothing in the prosecutor's statements or actions manipulated or misstated the evidence. As stated above, the trial court instructed each of the jurors that the closing arguments are not evidence. *See* Dec. 8, 2011 Trial Tr. at 235. Jurors are presumed to follow the instructions given and give less weight to counsel's arguments. *See Weeks*, 528 U.S. at 234; *Boyde*, 494 U.S. at 384 (counsel's arguments generally carry less weight with a jury than do court instructions).

Even if the prosecutor's comments and actions were improper, the comments did not infuse the trial with unfairness and result in a denial of due process of law. The comments and actions were based on argument not evidence, and do not provide a basis for finding the jury was unable to fairly judge the evidence in light of the prosecutor's conduct.

I find the CCA correctly determined that the use of the words notorious, charlatan, outrageous, diatribe, and infamous and recitation of any alleged political statements made by petitioner, [#14 at 18], did not so infect the trial with unfairness that petitioner's conviction denied his due process rights. Furthermore, the claims that the petitioner's rights were violated when the prosecution referenced (1) the kicking of photographer; (2) a false political finding regarding ACT's actions; and (3) the loans to petitioner's mother lack merit.

28

Petitioner fails to present clear and convincing evidence based on the trial court record that would invalidate the CCA's finding and would support a finding that the prosecution's comments and actions infused the trial with unfairness and resulted in a denial of due process of law. I find the CCA's decision regarding petitioner's personal attack claims neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim Thirty-One, therefore, will be denied for lack of merit.

### 5. Claim Thirty-Two

Petitioner asserts that the trial court denied petitioner's presentation of character evidence from two Colorado congressmen. Petitioner, relying on **Peterson v. United States**, 268 F.2d 87 (10th Cir. 1959), argues that in a case that involves honesty, character witnesses may not be arbitrarily limited. [#14 at 19].

The CCA addressed Claim Thirty-Two as follows:

VIII. Disallowing Two Character Witnesses

Bruce next contends that the trial court abused its discretion in ruling that he could not call two of his many character witnesses. We perceive no abuse of discretion.

"A trial court . . . cannot be considered to have abused its discretion in excluding logically relevant evidence as needlessly cumulative unless its decision, under the circumstances, was manifestly arbitrary, unreasonable, or unfair." **People v. Saiz**, 32 P.3d 441, 448 (Colo. 2001).

Here, Bruce elicited testimony on his truthful character from two state senators, a former state senate president, and a former naval officer. The

court thereafter ruled that Bruce could not call two additional witnesses to testify to his truthful character, reasoning that their testimony would be cumulative.   Although Bruce now argues that these two witnesses were more credible than the other four, he made no such argument at trial.

Accordingly, we conclude that the court acted within its discretion in ruling that the character testimony of the last two witnesses would be cumulative. ***See id.*** at 448 (concluding that a videotape containing a witness's prior inconsistent statement was necessarily cumulative when the prior inconsistent statement had already been introduced through the uncontested testimony of another witness).

[#9-8 at 30-31].

 "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " ***Crane v. Kentucky***, 476 U.S. 683, 690 (1986) (quoting ***California v. Trombetta***, 467 U.S. 479, 485 (1984) (citations omitted).   A defendant's right to due process and compulsory process includes the right to present witnesses in his or her own defense.   ***Washington v. Texas***, 388 U.S. 14, 18-19, (1967).   In presenting such testimony, the defendant must comply with established rules of evidence and procedure as required by the state "to assure both fairness and reliability in the ascertainment of guilt and innocence."   ***Chambers v. Mississippi***, 410 U.S. 284, 302 (1973).   A state, however, may not arbitrarily deny a defendant the ability to present testimony that is " '*relevant* and *material*, and . . . *vital* to the defense.' "   ***United States v. Valenzuela–Bernal***, 458 U.S. 858, 867 (1982) (quoting Washington, 388 U.S. at 16).   "The defendant's presentation of evidence is constrained by the twin prongs of relevancy and materiality."   ***United States v. Solomon***, 399 F.3d 1231, 1239 (10th Cir. 2005).

"Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense." *Id.*

In applying Supreme Court precedent to compulsory process challenges to a trial court's exclusion of evidence, the Tenth Circuit has undertaken a three-part inquiry. ***See Short v. Sirmons***, 472 F.3d 1177, 1186 (10th Cir. 2006) (citing ***United States v. Wooten***, 377 F.3d 1134, 1141 (10th Cir. 2004); ***Richmond v. Embry***, 122 F.3d 866, 872 (10th Cir.1997)). In ***Short***, the Tenth Circuit stated that

> we examine whether the excluded testimony was relevant. If so, we ask "whether the state's interest in excluding the evidence outweighed [the defendant's] interest in its admittance." ***Richmond***, 122 F.3d at 872. Finally, we consider "whether the excluded testimony was material, whether the excluded testimony was of such an exculpatory nature that its exclusion affected the trial's outcome." ***Id.*** These "three factors merely guide the district court and do not dictate the bounds of the court's discretion." ***United States v. Russell***, 109 F.3d 1503, 1511 (10th Cir.1997).

472 F.3d at 1186.

At issue here is the trial court's denial of character evidence by two Colorado congressmen, because the court found the evidence would be cumulative. During petitioner's presentation of his defense, the trial court found that petitioner had four witnesses who addressed petitioner's honesty and integrity and any additional witnesses on the topic would be a waste of time. Dec. 16, 2011 A.M. Trial Tr. at 126-27. The trial court told petitioner that going forward he may call other witnesses "who are other than character witnesses." ***Id.*** at 127. In his arguments on direct appeal in support of this claim, petitioner contends that the four character witnesses he was allowed to call were heavily challenged and the two congressmen he was unable to call would have held up better under cross-examination and if he had been notified previously he would have

called the two congressmen in place of the other character witnesses who testified. [#9-1 at 68-69].

Even if petitioner had supported Claim Thirty-Two in this action with the arguments he presented on direct appeal, the claim would still be subject to dismissal. Nothing in the direct appeal or in this action states what material testimony the two congressmen would have presented and how the testimony was of such an exculpatory nature that its exclusion would have affected the trial's outcome.

Petitioner fails to present clear and convincing evidence based on the trial court record that would invalidate the CCA's finding and would support a finding that the denial of the congressmen's character witness testimony was a violation of his constitutional rights, in particular his Sixth or Fourteenth Amendment rights. I find the CCA's decision regarding the denial of the congressmen's testimony neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts. Claim Thirty-Two, therefore, will be denied for lack of merit.

### 6. Claim Thirty-Three

Petitioner asserts that the trial court denied him re-direct of his own testimony in violation of his due process and equal protection rights under the Fourteenth Amendment. [#14 at 19]. Petitioner further asserts that he was not allowed to address issues raised by the prosecution on cross-examination. [*Id.*]

The CCA addressed this claim as follows:

## IX. Redirect Examination

Finally, Bruce contends that the trial court abused its discretion in precluding him from conducting redirect examination of himself. We disagree.

A trial court has discretion to determine the scope and limits of redirect examination. ***People v. Rod****riguez*, 209 P.3d 1151, 1161 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010). The court also has discretion over the order of proof at trial, and courts are given wide latitude in deciding such matters. ***People v. Walden***, 224 P.3d 369, 376 (Colo. App. 2009); ***see also*** CRE 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").

Here, during Bruce's cross-examination, the court stated that it was not going to allow him to conduct a redirect examination of himself because he had been "redirecting constantly" while answering the prosecution's questions. The court further explained that Bruce would be given the opportunity to answer the prosecution's questions "fully" during cross-examination.

At the conclusion of Bruce's cross-examination, the court advised the jury as follows:

> Ladies and gentlemen, during cross-examination the Court allowed Mr. Bruce to fully answer all questions, even though often times the information was not responsive to the question. I informed Mr. Bruce during that examination that I would allow him to answer all of those questions, and as such, the Court is not going to allow redirect.

We conclude that the court's ruling was within its discretion to control the mode and order of interrogating witnesses. ***See Walden***, 224 P.3d at 376. Specifically, because the court allowed Bruce to conduct what was, in effect, a redirect examination of himself while answering questions posed on cross-examination, we perceive no abuse of discretion in the court's decision not to allow Bruce to conduct further redirect examination.

[#9-8 at 31-33].

Every criminal defendant has a constitutional right to testify at trial in his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987). *Rock* further finds that "[l]ogically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense,' [citation omitted], is a right to testify himself, should he decide it is in his favor to do so." *Id.* at 52. The right to testify, however, is not without limitation. *Id.* at 55. "[R]estrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 56. The interests served must justify the limitation imposed. *Id.*

First, petitioner has failed in both his direct appeal and in this action to identify what he would have presented in his redirect testimony. Second, nothing in the trial record supports petitioner's conclusory claim that he was denied his fundamental right to testify. Petitioner's direct testimony included at least 193 pages of transcript and covered at least a day of trial. Dec. 19, 2011 Trial Tr. Part I at 81-114; Dec. 19, 2011 Trial Tr. Part II at 4-56; Dec. 2011 Trial Tr. Part III at 5-95; Dec. 20, 2011 A.M. Trial Tr. at 4-17. As found by the CCA, after the prosecution completed the cross-examination of petitioner, the trial court announced that because petitioner was allowed to fully answer all questions, even though the answer often was nonresponsive, there would be no redirect by petitioner. Dec. 20, 2011 Trial Tr. (P.M.) at 12.

Based on petitioner's lengthy narrative on direct and his constant redirect during the cross-examination, petitioner was given sufficient opportunity to present his testimony and to rebut the prosecution's cross. Therefore, the limitation on scope of testimony was neither arbitrary nor disproportionate to the interests of the efficient administration of the

case, **Rock**, 483 U.S. at 55-56, nor was it contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-05.

Petitioner has failed to present clear and convincing evidence based on the trial court record that would invalidate the CCA's finding and would support a finding that the denial of his redirect testimony was a violation of his right to testify. I find the CCA's decision regarding the denial of the redirect testimony neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts. Claim Thirty-Three, therefore, will be denied for lack of merit.

### III. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the *pro se* **Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody** [#13] and the **Amended Section 2254 Petition and Attachments** [#14] both are **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**;

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); and

4. That leave to proceed *in forma pauperis* on appeal is denied. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If petitioner files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma*

*pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, June 26, 2017.

BY THE COURT:

_____
Robert E. Blackburn
United States District Judge